ORDERED.

Dated: November 20, 2019

_____
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 9:17-bk-08133-FMD |
| | Chapter 7 |
| Paul C. Larsen, P.A., | |
| Debtor. | |
| _____/ | |
| Luis E. Rivera, II, as Trustee, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 9:18-ap-069-FMD |
| Paul C. Larsen, P.A., and Paul C. Larsen, | |
| Defendants. | |
| _____/ | |

**FINDINGS OF FACT,**
**CONCLUSIONS OF LAW, AND MEMORANDUM OPINION**

THIS PROCEEDING came before the Court for trial on June 24, 2019, on the Amended Complaint filed by Plaintiff, Luis E. Rivera II, as Trustee of the bankruptcy estate of Paul C. Larsen, P.A. ("Debtor")[1] Generally, Plaintiff seeks a determination that Paul C. Larsen ("Larsen") is

---

[1] Doc. No. 35.

individually liable for the debts of Debtor because Larsen used Debtor as his alter ego for improper purposes and for his own personal benefit.

At the conclusion of the June 24, 2019 trial, the Court directed the parties to file closing briefs and permitted Larsen to file written objections to Plaintiff's Exhibits 17, 20, 23, and 24 described below. Thereafter, the Court considered the record in the proceeding, including its order that limited Plaintiff's discovery of records in Larsen's possession to the four-year period prior to the filing of Debtor's bankruptcy case.[2] The Court set a status conference for August 5, 2019.[3] At that status conference, the Court related its concern to Larsen and Plaintiff's counsel that Larsen, in reliance on the Court's order limiting discovery, was not prepared at trial to address or rebut Plaintiff's Exhibits 17, 20, 23, and 24, each of which predated or related to the four years prior to Debtor's bankruptcy filing. After discussion with the parties and with their agreement, the Court entered an order that permitted Larsen to supplement the record with his objections to those exhibits, and if he desired, with a supplemental affidavit. The Court set the proceeding for further status conference on September 9, 2019, to determine whether it was appropriate to reset trial.[4]

Thereafter, Larsen filed his objections to Plaintiff's Exhibits 17, 20 and 23, together with additional documents for the Court's consideration.[5] Plaintiff filed responses to Larsen's objections,[6] to which Larsen replied.[7] The September 9, 2019 status conference was continued to September 23, 2019, at which time, with the agreement of the parties and Plaintiff's counsel's representation that he did not need to further examine Larsen, the record was deemed complete. Plaintiff's counsel stated

---

[2] Doc. No. 42.
[3] Doc. Nos. 111 and 113.
[4] Doc. No. 115.
[5] Doc. Nos. 119, 120, and 121.
[6] Doc. Nos. 122, 123, and 124.
[7] Doc. Nos. 128, 129, and 130.

he would rely on his previously filed written closing brief,[8] and Larsen was directed to file his closing argument.[9] The briefing is now complete.[10]

After careful consideration of the complete record in this proceeding and the parties' written closing arguments, the Court finds that Plaintiff has not satisfied his burden of proving a claim for alter ego liability or for piercing Debtor's corporate veil.

### A.    Background

Debtor, a Florida corporation, was formed by Larsen in 1989 and remained an active Florida corporation until 2017. Debtor's officers and directors were Larsen and Larsen's wife.[11] During its years of operation, Debtor collected brokerage commissions and consulting fees earned by Larsen for his work as a real estate broker and consultant, and Larsen received distributions from Debtor in varying amounts.

In 2014, James D. Milliken and Conrad Capital Group, LLC (together, "Judgment Creditors") obtained a judgment against Breakwater Capital Group V, LLC, ("Breakwater") in the amount of $551,267.22 in a case pending in the United States District Court for the District of Colorado, *Milliken, James, et al. vs. Larsen, Paul, et al.*, Case No. 2011CV292 (the "Colorado Action"). The Colorado Action apparently stemmed from a failed land purchase.[12] Although Larsen was affiliated with Breakwater and was named as a defendant in the Colorado Action, judgment was not entered against him.

In their efforts to collect the judgment against Breakwater, Judgment Creditors obtained two garnishment judgments: (1) in 2015, a Final Default Judgment of Garnishment against Gulfwinds

---

[8] Doc. No. 109.
[9] Doc. Nos. 131 and 132.
[10] Doc. No. 134.
[11] Plaintiff's Exhibit 4.
[12] Larsen's Exhibit 30.

3

Income Ventures, LLC ("Gulfwinds Income") as an entity that may have been indebted to or held property of Breakwater, and (2) in 2016, a Final Default Judgment of Garnishment against Debtor as an entity that may have been indebted to or held property of Gulfwinds Income.[13]

On September 22, 2017, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In its bankruptcy schedules, Debtor listed a checking account containing $152.00 as its only asset. Debtor listed Larsen as having a claim in the amount of $40,900.00, Judgment Creditors with a claim of $551,267.22, Gulfwinds Capital Group, LLC, ("Gulfwinds Capital") with a claim of $68,652.49, and Gulfwinds Income with a claim of $240,134.00. Gulfwinds Capital and Gulfwinds Income (together, "Gulfwinds") are listed on the schedules at the same mailing address as Debtor.[14]

On February 13, 2018, Judgment Creditors filed a complaint against Larsen and Debtor in Debtor's bankruptcy case.[15] The Chapter 7 Trustee was later substituted for Judgment Creditors as Plaintiff in the proceeding and filed an amended complaint on August 30, 2018 (the "Amended Complaint").[16] In the Amended Complaint, Plaintiff alleges that Larsen wrongfully obtained money from investors in the ten years before Debtor's bankruptcy petition was filed, that Larsen had transferred the money to Debtor, and that Larsen then funneled the money from Debtor to himself for his own personal benefit.[17]

The Amended Complaint contains four counts. Count I is an action to pierce Debtor's corporate veil; Count II is an action against Larsen for alter ego liability; Count III is an action to subordinate the scheduled claims of Larsen and Gulfwinds to the claims of Judgment Creditors; and

---

[13] Plaintiff's Exhibit 8.
[14] Case No. 9:17-bk-08133-FMD, Doc. No. 7.
[15] Doc. No. 1.
[16] Doc. Nos. 25, 35.
[17] Doc. No. 35, ¶ 13.

Count IV is an action for a declaratory judgment determining that Larsen is individually liable for the debts of Debtor.

### B.     Discussion

"Under Florida law, an alter ego claim is an action to impose liability on a corporation's principals or related entities where a corporation was organized or used to mislead creditors or to perpetrate a fraud upon them."[18] Generally, "courts are reluctant to pierce the corporate veil and will do so only in exceptional cases where there has been extreme abuse of the corporate form."[19]

To pierce the corporate veil, a plaintiff must show by a preponderance of the evidence that (1) a shareholder dominated and controlled the corporation to such an extent that the corporation was nonexistent and the shareholder was the alter ego of the corporation, (2) the corporate form was used fraudulently or for an improper purpose, and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.[20] The party seeking to pierce the corporate veil and impose alter ego liability on the principals bears the burden of proof.[21]

The Court has considered the entirety of the evidence presented at trial and finds that Plaintiff has not met his burden of proving a claim to pierce the corporate veil or to impose alter ego liability on Larsen for Debtor's debts.

### 1.     Shareholder control

Clearly, Larsen controlled Debtor. According to Debtor's statement of financial affairs filed in the bankruptcy case, Larsen was Debtor's President, Vice President, Treasurer, and one of its

---

[18] *In re Batcheler*, 600 B.R. 680, 688 (Bankr. S.D. Fla. 2019)(quoting *In re Xenerga, Inc.*, 449 B.R. 594, 598 (Bankr. M.D. Fla. 2011)).
[19] *Government of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1362 (S.D. Fla. 2002)(quoted in *In re Mongelluzzi*, 587 B.R. 392, 408 (Bankr. M.D. Fla. 2018)).
[20] *In re Batcheler*, 600 B.R. at 689.
[21] *Id.*(citing *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)).

directors.[22] Larsen does not dispute that he managed Debtor's operations and finances. But the question is not whether Larsen controlled Debtor, but whether Larsen dominated Debtor to such an extent that Debtor was in fact nonexistent because of the control.

The evidence demonstrates that Debtor was incorporated under Florida law in 1989, that Debtor was an active profit corporation until it filed bankruptcy in 2017, that Debtor filed annual reports with the Florida Secretary of State,[23] and that Debtor maintained a bank account at Bank of America in its sole name.[24] Although Plaintiff asserts that Debtor did not maintain other corporate records, such as stock books or minutes of shareholder meetings,[25] "[e]ven if Debtor[] did not follow corporate formalities, this alone is not enough to pierce the corporate veil."[26] The evidence does not show that Debtor's corporate identity was nonexistent.

### 2.    Fraudulent or improper purpose

"Florida's high regard for corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or to perpetrate fraud before a party can pierce a corporation's veil."[27] A moving party has a heavy burden to show improper conduct before he may pierce an entity's corporate veil.[28] Plaintiff did not meet the burden in this case.

The essence of Plaintiff's argument is that Larsen used Debtor "as a conduit to funnel fraudulently obtained investments from his other entities to take cash out for his personal benefit and to pay for personal living expenses."[29] For example, Plaintiff asserts in his Closing Argument that

---

[22] Case No. 9:17-bk-08133-FMD, Doc. No. 9.
[23] Plaintiff's Exhibit 4.
[24] *See* Plaintiff's Exhibit 21.
[25] Doc. No. 109, p. 9.
[26] *In re Mongelluzzi*, 587 B.R. at 408 (citing *John Daly Enterprises, LLC v. Hippo Golf Co., Inc.*, 646 F. Supp. 2d 1347, 1353 (S.D. Fla. 2009)).
[27] *In re Pearlman*, 462 B.R. 849, 856 (Bankr. M.D. Fla. 2012)(quoted in *In re Hintze*, 570 B.R. 369, 384 (Bankr. N.D. Fla. 2017)).
[28] *In re Hintze*, 570 B.R. at 384.
[29] Doc. No. 109, p. 4.

Larsen solicited funds for fictitious investments such as an agricultural development in Mozambique and a water development project in Colorado.[30] No evidence was introduced regarding any development in Mozambique; with respect to activities in Colorado, Larsen submitted the transcript of the court's June 2014 ruling in the Colorado Action.[31]

The Colorado Action apparently arose from a dispute between Judgment Creditors, Larsen, and other parties involving the purchase of property known as the Camenisch Land. In his ruling with respect to Larsen, the District Judge found:

> So, at the time Mr. Larsen approached Mr. Milliken, I'm finding that Mr. Larsen was upfront and that he did not breach any fiduciary duty. He explained the contract price. That's what Conrad Capital paid for it. . . . And I'm specifically finding that even though Mr. Larsen knew that there would be some markup from the sale to Camenisch Land Company from Renaissance that he didn't know what the amount was and the Court doesn't believe that that would have changed Mr. Milliken's view in entering this agreement.
>
> . . .
>
> Turning now to whether or not Mr. Larsen breached a fiduciary duty in this case or there was fraudulent concealment, I'm going to find that the Plaintiff has not met his burden on either of those counts. . . .
>
> As to the breach of fiduciary duty and the fraudulent concealment, Mr. Larsen, from what I can see, presented the pertinent information to Mr. Milliken when it should have been disclosed.[32]

The District Court then found in Larsen's favor on the claims brought by Judgment Creditors in the Colorado Action. Stated simply, there is no evidence in the record to support Plaintiff's assertion that Larsen engaged in fraudulent schemes to obtain money for fictitious investments, or that Larsen obtained funds fraudulently and then transferred the fraudulently obtained funds to Debtor.

Larsen acknowledges that Debtor received funds from other entities he controlled as consulting fees in connection with Debtor's business operations, that other entities loaned money to

---

[30] *Id.*
[31] Larsen's Exhibit 30.
[32] Larsen's Exhibit 30, pp. 6, 11, 12.

7

Debtor in the course of Debtor's business, and that he and Debtor entered into loan relationships from time to time.[33] But Larsen asserts that the loans were documented and reflected on all of the appropriate entities' books and records, that the loans were upon reasonable terms, and that he repaid his loans from Debtor.[34]

Plaintiff offered the following exhibits, admitted into evidence, that appear to be records maintained on QuickBooks or Quicken, in an effort to show the allegedly improper flow of funds from Debtor to Larsen:

    1.    Debtor's "Balance Sheet Details" for 2014, 2015, 2016, and 2017, that itemizes deposits and withdrawals from Debtor's Bank of America account and a Statement of Debtor's Assets and Liabilities for those four years.[35]

    2.    Debtor's "Net Worth" statements as of December 31, 2008, 2009, 2010, 2011, 2012, 2013, 2014, and 2015.[36]

    3.    A demonstrative chart showing Debtor's "Net Worth by Month" from January 2014 to September 2017.[37]

    4.    A "Transaction" register which purportedly lists Debtor's bank transactions from January 2008 through February 2015, with the date, amount, and brief description of the transaction.[38]

    5.    The "General Ledgers" for Paul C. Larsen, P.A., for 2014, 2015, 2016, and 2017.[39]

    6.    A photocopy of three checks written on Debtor's Bank of America account in November and December 2015 in the total amount of $3,816.90.[40]

    7.    A transaction register titled "Legal Expenses," listing dates, amounts, and payees of certain legal expenses.[41]

---

[33] Doc. No. 134, pp. 4-5.
[34] *Id.*
[35] Plaintiff's Exhibit 10.
[36] Plaintiff's Exhibit 13.
[37] Plaintiff's Exhibit 14.
[38] Plaintiff's Exhibit 18.
[39] Plaintiff's Exhibit 19.
[40] Plaintiff's Exhibit 21.
[41] Plaintiff's Exhibit 24.

        8.     A statement titled "Paul C. Larsen PA Income by Customer Detail" for 2015, 2016, and 2017.[42]

As described above, Larsen objected to three of Plaintiff's offered exhibits (Exhibits 17, 20, and 23) on a number of grounds, including his contention that the exhibits are not complete records between the parties referred to in the exhibits.[43] These exhibits are:

        1.     Bank records of entities such as Debtor, Conrad Capital Group, LLC, Lake Vista Holdings LLC, and Gulfwinds Income, with a handwritten chart purporting to demonstrate the flow of funds among these parties and to Larsen.[44]

        2.     A four-page chart titled "PCLPA 2008-9/2015 Paul Larsen Transaction Summary," which lists transfers to and from Debtor and Larsen.[45]

        3.     A document titled "Quicken – Larsen Personal Expenses," which lists Larsen's expenses from January 2008 to December 2014.[46]

The Court finds that Exhibits 17, 20, and 23 are admissible as evidence but, because they are not complete representations of the transactions between the parties,[47] the Court affords them the weight appropriate to such compilations.[48]

Plaintiff contends that his exhibits demonstrate (1) that entities controlled by Larsen deposited funds into Debtor's bank accounts for consulting fees earned by Larsen, and (2) that a number of

---

[42] Plaintiff's Exhibit 27.
[43] On August 5, 2019, the Court entered an Order on a post-trial Status Conference and permitted Larsen to supplement the trial record by filing written objections to Plaintiff's Exhibits 17, 20, 23, and 24. (Doc. No. 115.) On September 3, 2019, Larsen filed Objections to Plaintiff's Exhibits 17, 20, and 23. (Doc. Nos. 119, 120, 121.) Plaintiff filed Responses to Larsen's Objections, and Larsen filed Replies to Plaintiff's Responses. (Doc. Nos. 122, 123, 124, 128, 129, 130.)
[44] Plaintiff's Exhibit 17.
[45] Plaintiff's Exhibit 20.
[46] Plaintiff's Exhibit 23.
[47] For example, Exhibit 17 includes pages 2 of 5 and 3 of 5 of Debtor's Business Economy Checking statement for November 1, 2008, through November 30, 2008, but not pages 1, 4, or 5 of the statement. Exhibit 20 is described by Plaintiff as a "transaction summary" from the underlying records, and Exhibit 23 is a selected list of expense payments made by Larsen from 2008 to 2014.
[48] A determination of the weight to be given to evidence is a matter within the discretion of the trier of fact, which in this case is the Bankruptcy Court. *In re Olsen*, 522 B.R. 294, 318 (Bankr. D. Mont. 2014). For example, Exhibit 17 includes handwritten notations of unknown origin, such as a diagram involving Gulfwinds and characterizations of certain transactions reflected in the records, which are afforded little weight.

Larsen's personal expenses were paid from the same accounts.[49] But although the exhibits show numerous transactions among Debtor, Larsen, Gulfwinds, and other entities in the years before the filing of Debtor's bankruptcy case, they merely reflect that the transactions occurred while Debtor was an active entity, and that the transactions were reflected in Debtor's financial records. The exhibits do not reflect that the listed transactions were fraudulent or made for an improper purpose. For example, in his post-trial Closing Brief, Plaintiff described only two payments from Debtor's accounts to show the allegedly fraudulent or improper use of Debtor's corporate form: a check dated January 17, 2008, to Direct TV in the amount of $53.24 for internet service at a home office, and a check dated December 31, 2016, to Stephanie Miller LLC in the amount of $2,800.00 for accounting services.[50]

Plaintiff makes general assertions in his post-trial Closing Brief that Debtor was not adequately capitalized,[51] that many "loans" made from Larsen's other entities to Debtor corresponded to transfers from Debtor to Larsen,[52] and that Larsen used Debtor's assets to pay for his personal expenses and personal legal fees.[53] But he does not identify specific instances from the exhibits showing that Larsen improperly "funneled" funds to himself through Debtor, or demonstrate how any particular transaction was fictitious or fraudulent.

The Court finds that Plaintiff did not meet his burden of proving that Larsen used Debtor's corporate form fraudulently or for an improper purpose.[54]

---

[49] Doc. No. 109, pp. 4-5.
[50] Doc. No. 109, p. 6.
[51] Doc. No. 109, p. 7.
[52] Doc. No. 109, p. 8.
[53] Doc. No. 109, pp. 8-9.
[54] *In re Mongelluzzi*, 587 B.R. at 408.

### 3. Injury to Plaintiff

Finally, Plaintiff has not met his burden of proof on the third element of a claim for alter ego liability or to pierce the corporate veil—that the allegedly fraudulent or improper use of Debtor's corporate form caused injury to Judgment Creditors.

Judgment Creditors' initial judgment was against Breakwater,[55] and their claim against Debtor in this bankruptcy case is not based on any direct business dealing or financial transaction with Debtor. Rather, Judgment Creditors' claim against Debtor only arose after they attempted to collect the judgment against Breakwater by first obtaining a Final Default Judgment of Garnishment against Gulfwinds Income, and then by obtaining a Final Default Judgment of Garnishment against Debtor.[56] Accordingly, Judgment Creditors' claim against Debtor arose out of their attempt to collect the initial judgment against Breakwater, but Larsen's use of Debtor's corporate form is not the cause of Judgment Creditors' injury.[57]

### C. Subordination

Count III of Plaintiff's Amended Complaint is an action to subordinate the scheduled claims of Larsen, Gulfwinds Capital, and Gulfwinds Income to the claims of Judgment Creditors. As a practical matter, the last interim report filed by Plaintiff as Trustee in the main bankruptcy case reflects administered assets in the amount of $152.00.[58] The Court has determined that Plaintiff has not met his burden of proving the claims against Debtor and Larsen in this proceeding. Accordingly, it appears unlikely that any additional assets will be available for administration, and Plaintiff's claim for subordination is dismissed as moot.

---

[55] Plaintiff's Exhibit 8.
[56] *Id.*
[57] *See In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 375 (Bankr. M.D. Fla. 2014).
[58] Case No. 9:17-bk-08133-FMD, Doc. No. 33.

### D. Conclusion

In his Amended Complaint, Plaintiff seeks a determination that Larsen is individually liable for Debtor's debts because Larsen used Debtor as his alter ego for improper purposes and for his own personal benefit. The Court finds that Plaintiff has not met his burden of proving (1) that Larsen dominated and controlled Debtor to such an extent that Debtor was nonexistent and Larsen was the alter ego of Debtor, (2) that Debtor's corporate form was used fraudulently or for an improper purpose, or (3) that the fraudulent or improper use of Debtor's corporate form caused injury to Plaintiff or Judgment Creditors.

Accordingly, it is

**ORDERED** that final judgment shall be entered in favor of Defendants, Paul C. Larsen, P.A. and Paul C. Larsen, individually, and against Plaintiff, Luis E. Rivera, II, as Trustee, on Plaintiff's Amended Complaint.

The Clerk's office is directed to serve a copy of this order on interested parties via CM/ECF.